**OUTTEN & GOLDEN LLP**
Melissa Pierre-Louis
Nina R. Frank
Luis C. Hansen
685 Third Avenue, 25th Floor
New York, New York 10017
(212) 245-1000

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HONORE BURTT,<br><br>      Plaintiff,<br><br>      v.<br><br>NYU LANGONE MEDICAL CENTER,<br><br>      Defendant. | **COMPLAINT**<br><br>**NO.** _____<br><br>**Demand for Trial by Jury** |

**NATURE OF THE ACTION**

1.      Plaintiff Honore Burtt ("Ms. Burtt")'s nearly thirty-year career with Defendant NYU Langone Medical Center ("NYU" or "the Hospital") ended in June 2017, when Defendant abruptly terminated her employment because of her disability and in retaliation for her requests for reasonable accommodations. Throughout her employment, Ms. Burtt, a Type-1 diabetic, made requests to Defendant for reasonable accommodations in the form of scheduled work breaks and lunch times to maintain a steady intake of food to control her blood sugar level and prevent hypoglycemic episodes. Defendant repeatedly denied Ms. Burtt's requests for a reasonable accommodation and, in February 2017, she suffered a hypoglycemic episode during her shift. Following this incident, Ms. Burtt renewed her request for a reasonable

accommodation. Rather, than approve her reasonable accommodation requests, Ms. Burtt's supervisor, Alisia Grandville ("Ms. Grandville"), embarked on a campaign of discrimination against Ms. Burtt based on her disability, and in retaliation for her attempts to exercise her right to a reasonable accommodation. Defendant's acts of discrimination and retaliation culminated in a meeting in which Defendant terminated Ms. Burtt's employment and explicitly communicated to her that her disability was the basis for termination.

2.	Defendant's acts of discrimination and retaliation against Ms. Burtt included, but were not limited to, failure to provide a reasonable accommodation, temporarily suspending her employment for several weeks despite medical documentation provided by Ms. Burtt's physician clearing her to work, diminishing her responsibilities, reducing her compensation, and ultimately terminating her employment.

3.	Ms. Burtt now brings this action under federal, state, and local law against Defendant for failure to provide a reasonable accommodation for her disability, discrimination, and retaliation in violation of Title I of the Americans With Disabilities Act, 42 U.S.C § 12112(a), the New York State Human Rights Law, N.Y. Exec. L. §§ 290 *et seq.*, and the New York City Human Rights Laws, N.Y.C. Admin. Code §§ 8-101 *et seq*. She seeks declaratory relief, actual damages, compensatory damages, liquidated damages, punitive damages, interest, attorneys' fees and costs.

## JURISDICTION AND VENUE

4.	This Court has subject matter jurisdiction over Ms. Burtt's Americans with Disabilities Act ("ADA") claim pursuant to 28 U.S.C. § 1331 because these claims arise out of statutes of the United States.

5.	This Court has supplemental jurisdiction over Ms. Burtt's claims under the New York State Human Rights Laws and the New York City Human Rights Laws pursuant to 28

U.S.C. § 1367(a) because these claims are so closely related to Ms. Burtt's claims under the ADA that they form part of the same case or controversy under Article III of the United States Constitution.

6. Venue lies in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred within the Southern District of New York.

## PARTIES

**Honore Burtt**

7. Plaintiff Honore Burtt is an individual residing in Putnam County, in the State of New York.

8. At all times relevant to this Complaint, Plaintiff had Type-1 Diabetes, a disability cognizable under the ADA, the New York State Human Rights Laws, N.Y. Exec. L. §§ 290 et seq. ("NYSHRL"), and the New York City Human Rights Laws, N.Y.C. Admin. Code §§ 8-101 et seq. ("NYCHRL").

9. At all times relevant to this Complaint, Defendant was aware of Plaintiff's disability.

10. Defendant hired Ms. Burtt in June 1990 as a nurse.

11. For nearly thirty years, Ms. Burtt successfully performed the functions of her job, including caring for patients, providing emergency care for patients, drafting nursing standards, and co-chairing the Nursing Resuscitation and Critical Care Practice Councils. Ms. Burtt also served as an adjunct clinical faculty at the NYU Rory Meyers College of Nursing.

12. Ms. Burtt's exemplary job performance is reflected in her performance reviews. Defendant provided Ms. Burtt with yearly performance reviews where it assessed her performance on a scale from 1 to 5, 1 being the lowest score and 5 being the highest. During her nearly thirty-year tenure with the Hospital, Ms. Burtt's supervisors consistently rated her a 4 or higher on her evaluations. In her final review, Ms. Burtt's supervisor rated her a 5. As a result of her excellent performance reviews, the Hospital provided Ms. Burtt with yearly merit bonuses.

13. Ms. Burtt remained an employee with Defendant until June 21, 2017, when Defendant terminated her employment.

**NYU Langone Medical Center**

14. Defendant NYU Langone Medical Center ("NYU" or the "Hospital"), is a not-for-profit hospital corporation doing business within New York County in the State of New York and is located within the City of New York at 560 First Avenue, New York, NY 10016.

15. NYU consists of several hospitals and treatment centers, including the Tisch Hospital, the Rusk Institute of Rehabilitation Medicine, NYU Langone Hospitals – Orthopedic, NYU Langone Hospitals – Brooklyn, and the Clinical Cancer Center.

16. NYU employs 15 or more employees located in New York, New York. Based upon information and belief, NYU employs approximately 25,000 employees in New York, NY.

17. At all times relevant to this Complaint, Defendant NYU was Ms. Burtt's employer within the meaning of the ADA, the NYS HRL, and the NYC HRL.

**FACTUAL ALLEGATIONS**

18. Ms. Burtt was hired by NYU in 1990 as a nurse. In 2013, Ms. Burtt joined the newly formed Adult Langone Emergency Response ("ALERT") unit as one of its original members.

4

19. As an ALERT nurse, the essential functions of Ms. Burtt's position included providing patient care, providing emergency patient care, drafting nursing standards, mentoring junior nurses, monitoring and maintaining evidence-based care, maintaining accurate documentations of patient records, and co-chairing the Nursing Resuscitation and Critical Care Practice Councils. The select nurses on the ALERT unit serve as expert members of the Cardiopulmonary Arrest Team, Rapid Response Team, Stroke Team, Obstetric Hemorrhage Team, Maternal Hypertensive Crisis Team, Behavioral Emergency Response Team, and Cool Team, and as clinical and educational resources for the nursing staff.

20. Ms. Burtt also served as an adjunct clinical faculty member at the NYU Rory Meyers College of Nursing.

21. During her tenure, Ms. Burtt was a stellar employee and consistently received positive performance evaluations and merit bonuses from her supervisors. The Hospital also gave her several promotions during the course of her employment.

**Defendant's Failure to Provide Reasonable Accommodations for Ms. Burtt's Disability**

22. Ms. Burtt suffers from Type 1 Diabetes. Type 1 Diabetes is a disability pursuant to the ADA, the NYSHRL and the NYCHRL because it substantially limits the major life activities of walking, eating, communicating, concentrating, thinking, and major bodily functions, including the endocrine system.

23. Ms. Burtt's disability did not impede her ability to perform the essential functions of her job. With the reasonable accommodation of scheduled work breaks to eat at regular intervals to ensure that her blood glucose levels remain stable, Ms. Burtt could perform the essential functions of her job. Ms. Burtt performed the essential functions of her job for twenty-seven years with no ill effect on her work, patient care, or performance.

24. Without the reasonable accommodation of scheduled work and lunch breaks, Ms. Burtt's blood glucose could drop to very low levels. This is known as Hypoglycemia, a common side effect of Type 1 Diabetes which occurs when blood glucose levels fall below 70 milligrams/deciliter. During such episodes, the individual can become stubborn and irritable, fatigued, sluggish, or may briefly lose consciousness.

25. At the time that Ms. Burtt joined the ALERT unit, Defendant knew that she had Type-1 Diabetes and that she could occasionally suffer from hypoglycemic episodes if she was unable to eat for an extended period of time.

26. Prior to 2016, Ms. Burtt was able to take breaks, which allowed her to eat at regular intervals and minimized the risk of becoming Hypoglycemic.

27. This changed in May 2016, when Ms. Alisia Granville joined the ALERT team as the Nurse Coordinator. Ms. Burtt had informed Ms. Granville of her medical condition prior to her becoming the Nurse Coordinator, as Ms. Grandville had previously treated Ms. Burtt for her disability. Ms. Burtt also specifically requested a schedule with fixed breaks and lunch times. Despite her knowledge of Ms. Burtt's disability and need for a reasonable accommodation, Ms. Granville did not implement Ms. Burtt's requests. Instead, Ms. Granville instructed Ms. Burtt to ask Ms. Granville for breaks as needed.

28. Ms. Granville's direction did not reasonably accommodate Ms. Burtt's disability because Ms. Burtt's shifts were busy and she was often unable to coordinate breaks with Ms. Granville. As a result, Ms. Burtt would often go several hours without eating. Defendant could have easily avoided this by giving Ms. Burtt a set time for breaks and lunch time.

29. Consequently, on February 1, 2017, Ms. Burtt was not provided with the reasonable accommodation of a scheduled break and suffered a hypoglycemic incident caused by

6

her diabetic condition. As a precaution, she went to NYU's emergency room and quickly recovered after she was able to consume food. Ms. Burtt's endocrinologist also cleared her to return to work immediately in a letter dated February 2, 2017.

30. The following day, Ms. Granville and Evelyn Tavares, HR Representative, informed Ms. Burtt that, despite her medical clearance from her treating physician, NYU would not allow her to return to work and that the Hospital was placing her on a forced leave of absence until they could conduct an independent medical examination.

31. The Hospital, however, never completed an independent medical examination, even though there are forty-one listed endocrinologists on NYU's website.

32. NYU barred Ms. Burtt from returning to work for over a month, from February 2, 2017 to March 13, 2017. During her forced leave, Ms. Burtt repeatedly told NYU that she was able to return to work and sent multiple documents from her endocrinologist clearing her to return.

33. While on this forced leave, Ms. Granville diminished Ms. Burtt's responsibilities by removing her as chair of the Nursing Resuscitation Council. Because having this position increased Ms. Burtt's yearly bonus, the Hospital's actions also reduced her compensation.

34. On March 10, 2017, over a month into her forced leave and prior to her return to work, Ms. Burtt received an email from Ms. Granville threatening her with disciplinary action if she "continued to neglect" her condition. Ms. Granville informed Ms. Burtt that after her absence, she would have to "prove [her]self" in order to earn back her chairship on the Resuscitation Council.

35. NYU finally allowed Ms. Burtt to return to work on March 14, 2017, using the same medical documentation from her treating physician that she provided on February 2, 2017.

36. A few days after she returned to work, Ms. Burtt again requested a reasonable accommodation from Ms. Tavares of a dedicated lunch hour so that she could ensure her blood sugar was at normal levels. Ms. Tavares responded that Ms. Burtt would need to fill out a written request for accommodations. Ms. Tavares did not send Ms. Burtt the form until April 14, 2017 – a month later, and only after Ms. Burtt followed-up with Ms. Tavares with multiple phone calls and an email.

37. A few weeks later, Ms. Burtt met with Ms. Granville to discuss her requests for reasonable accommodations. Ms. Granville denied Ms. Burtt's request for a reasonable accommodation. Ms. Granville told Ms. Burtt that the request forms "didn't matter" and directed Ms. Burtt to informally schedule her own break times. Ms. Granville further advised Ms. Burtt that it was her responsibility to "speak to [her] peers" regarding the break times she wanted to take despite the fact that it was Ms. Granville's role to coordinate nurse schedules.

38. The Hospital's request that Ms. Burtt coordinate her own breaks did not constitute a reasonable accommodation. Ms. Burtt did not have the authority to set nurse schedules. In addition, because ALERT shifts often became busy, Ms. Burtt was often unable to coordinate unscheduled breaks with her coworkers.

39. Ms. Granville failed to accommodate Ms. Burtt even though Ms. Burtt's requests were reasonable. Ms. Granville had the capability to staff Ms. Burtt's shifts to ensure that Ms. Burtt had coverage to take fixed breaks.

40. Because of Ms. Granville's failure to accommodate, Ms. Burtt was often the only nurse on the unit and could not take unscheduled breaks because it would require leaving acute patients without coverage.

41. As a result of the Hospital's failure to accommodate, on June 15, 2017, Ms. Burtt suffered another hypoglycemic episode.

42. On that day, Ms. Burtt had been unable to take a break to eat due to the Hospital's refusal to accommodate her. Near the end of her shift, Ms. Burtt noticed that a patient's condition had deteriorated and needed immediate attention. Ms. Burtt then called for two other ALERT nurses to respond to the situation. Ms. Burtt remained by the patient's bed side while a physician intubated the patient. After the procedure was completed, Ms. Burtt's glucose level dropped and she became hypoglycemic. A night shift nurse accompanied Ms. Burtt to the ALERT office, where Ms. Burtt ate a snack and quickly recovered. Because Ms. Burtt's shift ended by the time she arrived at the office, Ms. Burtt went home as soon as she finished her meal. This hypoglycemic episode was so transient, that Ms. Burtt did not need any medical attention and was able to take the train home by herself, as she normally did.

43. When Ms. Burtt returned to the Hospital the following day, however, Ms. Granville informed Ms. Burtt that she needed to immediately exit the premises and that she could not return to work until she was medically cleared, despite the fact that her endocrinologist had cleared her to work.

44. On June 21, 2017, Ms. Granville and Mr. Ronald Keller, Director of Surgical Services, met with Ms. Burtt and informed her that NYU was terminating her employment "because of the incident." Though she had worked for NYU for almost 30 years, the Hospital did not offer her any severance or the chance to work elsewhere in the hospital.

**EEOC Determined that Ms. Burtt was Subjected to Retaliation and Discrimination**

45. On October 17, 2017, Ms. Burtt filed a Charge with the U.S. Equal Employment Opportunity Commission ("EEOC" or the "Commission").

9

46. At the conclusion of its investigation, the Commission determined that, based on the information provided by the parties, "there is reasonable cause to believe that the allegations made by [Ms. Burtt] are substantially true [. . .]."

47. The Commission concluded that:

> The record of evidence confirms that Respondent was aware of Charging Party's disability. Respondent states that it provided Charging Party with accommodations. However, the accommodation provided to Charging Party was not concrete and did not allow for a set lunch break, but instead told her to ask when she needed to take a break to eat. Furthermore, Respondent allowed Charging Party back to work after she was forced out on leave, and relied on Charging Party's treating physician's recommendation of her return to work. The same recommendation provided, prior to Charging Part being forced out on leave.
>
> Based on the above, Respondent's asserted defense does not withstand scrutiny and the Commission has determined that there is reasonable cause to believe Charging Party's allegation that she was subjected to retaliation and discrimination by Respondent based on her disability, when it terminated her employment, in violation of the Americans with Disabilities Act, as amended.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (Discrimination Because of Disability)
### (Title I of the Americans With Disabilities Act, 42 U.S.C 12112(a).)

48. Ms. Burtt incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

49. The Americans with Disabilities Act ("ADA") prohibits any employer from discriminating against an employee in regard to job application procedures . . . hiring . . . or discharge of employment on the basis of disability. 42 U.S.C § 12112(a).

50. Defendant NYU was a qualified employer within the meaning of the ADA. Plaintiff is a qualified individual with a disability who was able to perform the essential functions of her job with or without a reasonable accommodation pursuant to the ADA.

51. Defendant violated the Americans with Disabilities Act when it failed to provide Ms. Burtt with reasonable accommodations for her disability, temporarily suspended her employment, diminished her responsibilities, decreased her pay and ultimately terminated her employment because of her disability.

52. Defendant's violations of the Americans with Disabilities Act, as described in the Complaint, were willful and intentional. Defendant did not make a good faith effort to comply with the ADA with respect to Ms. Burtt.

53. As a direct result of Defendant's discriminatory acts, Ms. Burtt is entitled to damages including, but not limited to past and future lost wages and benefits, damages to compensate her for past and future physical and emotional distress, punitive damages, reasonable attorneys' fees and costs of this action, and pre-judgment interest.

**SECOND CLAIM FOR RELIEF**
**(Discrimination Because of Disability)**
**(New York State Human Rights Law, N.Y. Exec. L. §§290 *et seq*.)**

54. Ms. Burtt incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

55. The NYSHRL prohibits any employer from discriminating against any employee based on their disability.

56. Defendant NYU was a qualified employer within the meaning of the NYSHRL. Plaintiff is a qualified individual with a disability who was able to perform the essential functions of her job with or without a reasonable accommodation pursuant to the NYSHRL.

57. Defendant violated the NYSHRL when it failed to provide Ms. Burtt with reasonable accommodations for her disability, temporarily suspended her employment, diminished her responsibilities, decreased her pay and ultimately terminated her employment because of her disability.

58. Defendant's violations of the Americans with Disabilities Act, as described in the Complaint, were willful and intentional. Defendant did not make a good faith effort to comply with the ADA with respect to Ms. Burtt.

59. As a direct result of Defendant's discriminatory acts, Ms. Burtt is entitled to damages including, but not limited to past and future lost wages and benefits, damages to compensate her for past and future physical and emotional distress, and pre-judgment interest.

**THIRD CLAIM FOR RELIEF**
**(Discrimination Because of Disability)**
**(New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*)**

60. Ms. Burtt incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

61. The NYCHRL prohibits any employer from discriminating against any employee based on their disability.

62. Defendant NYU was a qualified employer within the meaning of the NYCHRL. Plaintiff is a qualified individual with a disability who was able to perform the essential functions of her job with or without a reasonable accommodation pursuant to the NYCHRL.

63. Defendant violated the NYCHRL when it failed to provide Ms. Burtt with reasonable accommodations for her disability, temporarily suspended her employment, diminished her responsibilities, decreased her pay and ultimately terminated her employment because of her disability.

64. NYU knew that its actions constituted unlawful discrimination and showed willful and/or reckless disregard for Ms. Burtt's statutorily protected rights.

65. Ms. Burtt is entitled to damages including, but not limited to past and future lost wages and benefits, damages to compensate her for past and future physical and emotional distress, punitive damages, reasonable attorneys' fees and costs of this action, and pre-judgment interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment:

A. Declaring that the acts, practices, and omissions complained of herein are unlawful and violate the ADA, NYSHRL, and NYCHRL;

B. Directing Defendant to pay Ms. Burtt her back pay, front pay, compensatory damages, liquidated damages, and pre-judgment interest for violations of the ADA;

C. Directing Defendant to pay Ms. Burtt her back pay, front pay, and compensatory damages for violations of the NYSHRL;

D. Directing the Defendant to pay Ms. Burtt her back pay, front pay, compensatory damages, and pre-judgement interest for violations of the NYCHRL;

E. Directing Defendant to pay exemplary and punitive damages commensurate with Defendant's ability to pay and sufficient to punish and deter continuation of Defendant's discriminatory and unlawful employment practices;

F. Awarding Ms. Burtt reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5) and N.Y.C. Admin. Code § 8-502; and

G. Awarding such other legal and equitable relief as this Court deems necessary, just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Ms. Burtt demands a trial by jury on all questions of fact raised by the complaint

Dated: New York, New York
October 5, 2018

Respectfully submitted,

/s/
Melissa Pierre-Louis

**OUTTEN & GOLDEN LLP**
Melissa Pierre-Louis
Nina R. Frank
Luis C. Hansen
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2071

*Attorneys for Plaintiff*